IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRAD E. COFFEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-04-1034-M |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g) of the final decision of

Defendant Commissioner denying his application for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §416(i), 423.  Defendant has answered the Complaint

and filed the administrative record (hereinafter TR___).  The parties have briefed the issues,

and the matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. §636(b)(1)(B).  For the following reasons, it is recommended that

the Commissioner's decision be affirmed.

I. Background

Plaintiff filed his application for benefits on August 6, 2002 (protective filing date),

alleging that he became disabled on January 31, 2002. (TR 48-50).  He described his past

relevant work as an electrical lineman for 21 years. (TR 60).  Plaintiff alleged that he became

unable to work on January 31, 2002, because of fear of working with high voltage power

lines with panic attacks on the job and also because he has only one kidney. (TR 59). Plaintiff's application was administratively denied. (TR 28).  At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Jordan ("ALJ") on July 28, 2003, at which Plaintiff and a medical advisor ("MA") testified.  (TR 173-205).  A vocational expert ("VE") provided written responses to interrogatories submitted by the ALJ, and Plaintiff was advised of his right to request a supplemental hearing or other avenues of cross-examination with respect to this additional evidence. (TR 89-94).

Subsequently, the ALJ issued a decision (TR 16-24) in which the ALJ found that Plaintiff has severe impairments due to anxiety and depression.  The ALJ found that Plaintiff is precluded from performing his past relevant work as an electrical lineman as a result of these severe impairments.  Nevertheless, despite these severe impairments and relying on the VE's responses to the interrogatories submitted by the ALJ, the ALJ found that Plaintiff is capable of performing other jobs that are available in the economy in sufficient numbers, including the jobs of construction laborer, stock handler, press machine operator, production inspector, assembler, and machine operator.  Based on this finding, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act.  The agency's Appeals Council declined to review the administrative decision (TR 5-7).  Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal

standards were applied.  Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991).  The Court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence.  Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(per curiam).   If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the Court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(per curiam).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion.  Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §416(i).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. §404.1520(b)-(f) (2004); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail).  The claimant bears the initial burden of proving that he has one or more severe impairments.  20 C.F.R. §404.1512 (2004); Turner v. Heckler, 754 F.2d 326, 328

3

(10th Cir. 1985). Where the plaintiff makes a *prima facie* showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." Turner v. Heckler, 754 F.2d at 328; Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Analysis

Plaintiff contends that the ALJ erred in his duty to develop the record by failing to recontact Plaintiff's treating family physician, Dr. Chaparala, with respect to Dr. Chaparala's opinion set forth in a mental medical source statement. Respondent contends that no error occurred with respect to the ALJ's decision, that the ALJ properly developed the record, and that there is substantial evidence to support the ALJ's decision.

"[T]he ALJ is responsible in every case 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(quoting Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360-361 (10th Cir. 1993)). The ALJ need not "exhaust every possible line of inquiry" but must ensure that the record is fully and fairly developed as to the relevant issues. Id. at 1168. "If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available." Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004)(citing, e.g., 20 C.F.R. §404.1512(e)(1)).

4

Here, Plaintiff alleged disability due to mental impairments, specifically anxiety and depression, and the absence of one kidney.  The medical records submitted by Plaintiff show that Plaintiff has been treated by a family physician, Dr. Chaparala, for several years. Treatment notes from Dr. Chaparala in the record span the period of time between March 28, 2000 and May 28, 2003. (TR 123-132, 164).  These records show that Dr. Chaparala first assessed Plaintiff as having acute anxiety and depression in October 2001, for which he prescribed medications. (TR 130).  The following month, Dr. Chaparala noted that Plaintiff was "markedly improved" on the medications and that Plaintiff stated the medications were helping his anxiety and depression. (TR 130).  In February 2002, Plaintiff again complained of anxiety and panic attacks and stated that he had stopped taking the medication previously prescribed by Dr. Chaparala. (TR 128).  Dr. Chaparala assessed Plaintiff as having anxiety and depression with panic disorder, for which he prescribed medications. (TR 127).  Six days later, Plaintiff returned to Dr. Chaparala for follow-up and stated that he was feeling better, and was less shaky, panicky, and depressed on the medications. (TR 127).  Dr. Chaparala's office notes reflect that he saw Plaintiff approximately every two weeks in March and April of 2002, and that Plaintiff's mental impairments continued to improve. (TR 124-126).  By April 29, 2002, Dr. Chaparala noted Plaintiff stated he felt much better, was much less nervous, and was no longer depressed, and Dr. Chaparala assessed Plaintiff as being "markedly improved." (TR 124).  The physician also noted that Plaintiff stated he was planning to receive two years of disability payments from his long-term employer, Kay Electric Cooperative, and obtain vo-tech training. (TR 124).  Dr. Chaparala continued to note

5

in May and August 2002 that Plaintiff's mental impairments were improving. (TR 124).  In a letter from Dr. Chaparala to Plaintiff's long-term disability insurer dated May 29, 2002, Dr. Chaparala stated that Plaintiff had made "satisfactory progress." (TR 123).  In May 2003, Dr. Chaparala noted that Plaintiff appeared to be in a stable condition with no new complaints. (TR 164).  However, in July 2003, Dr. Chaparala completed a mental medical source statement in which the physician indicated Plaintiff exhibited severe or marked limitations in almost all work-related mental functions and stated that Plaintiff "is 100% disabled.  Is [sic] incapable of doing any type of work due to severe psychological disorder, in spite of [sic] placing him on medication etc." (TR 165-168).

Other medical evidence in the record reflects that Plaintiff was evaluated by Dr. Bharati, a psychiatrist, in July 2002 in connection with Plaintiff's application for long-term disability benefits.  (TR 78, 95-97).  At this evaluation, Plaintiff reportedly stated that he had been unable to work since February 2002 because of anxiety and panic attacks caused by a fear of touching high voltage power lines. Plaintiff stated that he was taking medications for these impairments prescribed by Dr. Chaparala and that he was feeling better and the medications were helping.  Plaintiff reportedly also stated that although he could not return to work as a lineman he would consider a different job.  Dr. Bharati noted that Plaintiff described his present anxiety as "tremors" and that he had cautioned Plaintiff of a common side effect of anxiety and restlessness related to the medication Plaintiff was taking for his stomach ulcer.  Dr. Bharati noted he advised Plaintiff to continue the anti-depressant medication prescribed by Dr. Chaparala, to stop taking the anti-anxiety and stomach ulcer

medications prescribed by Dr. Chaparala, and to undergo individual therapy to desensitize his fears.  In Dr. Bharati's assessment, Plaintiff was able to work with the restriction that he not work with high voltage power lines.

Plaintiff was evaluated by Dr. Vaidya, a psychiatrist, at Plaintiff's request in January 2003.  (TR 116-118).  At this evaluation, Dr. Vaidya noted that Plaintiff described panic attacks related to his work as an electrical lineman and the receipt of medications from his family physician, Dr. Chaparala, to treat his anxiety and depression.  Plaintiff stated that since he was first prescribed medications for his mental impairments, he had reduced the dosage of the anti-anxiety medication and stopped taking the anti-depressant medication prescribed by Dr. Chaparala. Plaintiff also stated that he was receiving long-term disability benefits from his former employer and expected to receive these benefits for two years.  Dr. Vaidya diagnosed Plaintiff as having moderately-severe major depression and panic disorder for which he prescribed anti-depressant medication. Plaintiff returned to Dr. Vaidya for one follow-up evaluation in January 2003, at which Plaintiff stated that the medications were helping.  Dr. Vaidya noted Plaintiff's statements that during the day he generally visited his parents once or twice, washed dishes, ran the vacuum sweeper, and watched television. (TR 162).  Dr. Vaidya advised Plaintiff to return for further treatment but Plaintiff did not show for the follow-up appointment. (TR 162).

At the hearing, the ALJ elicited the testimony of a MA, Dr. Rawlings, a psychologist. Dr. Rawlings testified that Plaintiff has a severe mental impairment but that the impairment was not disabling *per se*, that Plaintiff's severe anxiety disorder improved with medication,

and that Dr. Chaparala's mental functional capacity statement was "an exaggeration" because the medical record was not consistent with the physician's written assessment. (TR 198-202). Dr. Rawlings also submitted a written assessment of Plaintiff's mental residual functional capacity based on his review of the record and Plaintiff's testimony at the hearing.  In this assessment, Dr. Rawlings stated that Plaintiff was either moderately or not significantly limited in his ability to perform mental work-related activities except that he was markedly limited in his ability to interact appropriately with the general public. (TR 169-171).

The medical record was more than adequate to develop the issues of Plaintiff's mental impairments.  The ALJ followed the requisite sequential procedure in summarizing and evaluating the relevant medical and non-medical evidence.  (TR 18-20).  With respect to Dr. Chaparala's mental residual functional capacity assessment completed in July 2003, the ALJ's decision reflects a lengthy summary of the physician's assessment and a reasoned explanation of the ALJ's reasons for rejecting the assessment.  (TR 20).  Plaintiff concedes in his brief that the ALJ provided justifiable reasons for not giving controlling weight to the opinion of Dr. Chaparala.  However, Plaintiff contends that the ALJ should have given Dr. Chaparala the opportunity to provide support for his opinion or "to modify his opinion based on information as to the correct use of the form." Plaintiff's Brief, at 4.  Plaintiff refers to Dr. Rawlings' testimony at the hearing in which Dr. Rawlings stated that Dr. Chaparala was "not familiar with the correct usage of th[e mental residual functional capacity] form, so he has erred in the direction of the severe limitation.  I think it's an overrating, given the entire medical record and the evaluations by the two psychiatrists and [Plaintiff's] own testimony.

8

I think it probably reflects his concern and compassion for the Claimant, and his interest in his well-being, and .... I believe it's an exaggeration." (TR 201-202).

However, the ALJ rejected Dr. Chaparala's opinion based on his finding that Dr. Chaparala's written assessment and opinion was contradicted by his own treatment records showing Plaintiff's mental impairments improved with medications, based on Dr. Chaparala's statement in October 2002 that Plaintiff could remember, comprehend, and carry out simple instructions on an independent basis (see TR 122), the assessment of Dr. Bharati that Plaintiff could work so long as he did not work with high voltage power lines, and the inconsistencies between the record and Dr. Chaparala's opinion pointed out at the hearing by Dr. Rawlings. (TR 20).  While the ALJ stated that he was not giving Dr. Chaparala's opinion "controlling weight" it is clear from the decision that the ALJ simply rejected Dr. Chaparala's written assessment of Plaintiff's mental residual functional capacity because "it is in conflict with his own treatment records and inconsistent with the other substantial evidence as noted above." (TR 20).  In rejecting Dr. Chaparala's opinion, the ALJ properly relied on "contradictory medical evidence and not [his] own credibility judgments, speculation or lay opinion." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). Thus, no error occurred in this regard, and the ALJ furthermore did not err in failing to recontact the physician.

There is substantial evidence in the record to support the ALJ's finding that Plaintiff is not disabled as he retains the ability to perform a substantial number of jobs available in the economy.  The ALJ found that Plaintiff had the residual functional capacity despite his

severe impairments "to perform the nonexertional requirements of work except for work that requires active interaction with the public; working alone; or working with high voltage lines" and that Plaintiff was capable of performing "simple tasks and some complex tasks with routine supervision." (TR 23).  This finding is consistent with the medical record, including the evaluations by Dr. Bharati, the Plaintiff's own testimony concerning his multiple and varied daily activities, Plaintiff's statements in the record that he could perform other work and desired to obtain vocational-technical training for work not involving working with high voltage power lines, Dr. Rawling's written assessment of Plaintiff's residual functional capacity, and the written residual functional capacity assessments completed by the reviewing agency medical consultants.  With respect to the availability of other jobs in the economy employing this residual functional capacity, the VE's responses to the ALJ's interrogatories provide substantial evidence to support the ALJ's decision. Accordingly, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for disability insurance benefits.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      June 14th     , 2005, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their

respective right to appellate review of both factual and legal issues contained herein. <u>Moore</u> <u>v. United States</u>, 950 F.2d 656(10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this _____25th_____ day of _____May_____, 2005.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE